UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LASHEENA COOPER,                          Case No. 1:16-cv-240
on behalf of L.C.,                        Beckwith, J.
    Plaintiff,                            Litkovitz, M.J.

    vs.

COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
    Defendant.

Plaintiff brings this pro se action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

finding her disability ceased on May 28, 2013 and she no longer qualified for Supplemental

Security Income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc.

11) and the Commissioner's response in opposition (Doc. 18).

**I. Procedural Background**

Plaintiff was born in 2004 and was 10 years old at the time of the administrative law

judge's ("ALJ") decision. Plaintiff's mother, Lasheena Kilgore Cooper, filed an application for

child's SSI benefits on plaintiff's behalf in June 2010, alleging disability due to attention deficit

hyperactivity disorder ("ADHD"). (Tr. 188-94, 208). Plaintiff was found disabled beginning

May 24, 2010, based on an extreme limitation in her ability to interact and relate with others due

to a communication disorder. (Tr. 92-100). After a continuing disability review, the

Commissioner determined initially and upon reconsideration that plaintiff's disability ceased on

May 28, 2013, because of an improvement in her ADHD with treatment. (*See* Tr. 101-108, 124-

33). Plaintiff, proceeding pro se, requested and was granted a *de novo* hearing before ALJ John

M. Prince. Plaintiff and her father, William Cooper, appeared and testified at the ALJ hearing.
On August 29, 2014, the ALJ issued a decision finding that plaintiff's disability ended on May
28, 2013 and that she has not become disabled again since that date. (Tr. 21-40). Plaintiff's
request for review by the Appeals Council was denied, making the decision of the ALJ the final
administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI as a child under the age of 18, plaintiff must file an application and be
an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.
Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual
under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically
determinable physical or mental impairment, which results in marked and severe functional
limitations, and which can be expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining
whether a child is disabled for purposes of children's SSI benefits:

1. Is the child engaged in any substantial gainful activity? If so, benefits are
denied.

2. Does the child have a medically severe impairment or combination of
impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any
impairment in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt.
P. 20 C.F.R. §416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d). An impairment which meets or medically equals the severity of a
set of criteria for an impairment in the listings, or which functionally equals a listed impairment,

causes marked and severe functional limitations. 20 C.F.R. § 416.924(d). Plaintiff was found to be disabled under this three-step process as of May 24, 2010. (Tr. 92-100).

Where, as here, a child has previously been found to be disabled under the Social Security regulations, continued eligibility for benefits must be reviewed periodically. 20 C.F.R. § 416.944a(a). The Commissioner must first determine whether there has been medical improvement in the child's condition. If there has been no medical improvement, the child is found to still be disabled. 20 C.F.R. § 416.944a(a)(1). If there has been medical improvement, the agency evaluates whether the child's impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before. If it does, the child is found to still be disabled. *Id.* If the impairment no longer meets or equals the severity of the listed impairment, the agency proceeds to determine whether the child's impairment(s) meet or medically or functionally equal a listing. *Id.*

In determining whether a child's impairment(s) functionally equal the listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered

3

in making this evaluation include (1) how well the child initiates and sustains activities, how much extra help she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by her medications or other treatment. 20 C.F.R. § 416.926a(a)(l)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The most recent favorable medical decision finding that the [plaintiff] was disabled is the determination dated October 20, 2010. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the [plaintiff] had the following medically determinable impairments: attention-deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and language/speech delays. These

4

impairments were found to functionally equal the listings (20 CFR 416.924(d) and 416.926a).

3. Medical improvement occurred as of May 28, 2013 (20 CFR 416.994a(c)).

4. The [plaintiff] was born [in] 2004. Therefore, she was a school-age child, as of May 28, 2013. The [plaintiff] is currently a school-age child (20 CFR 416.926a(g)(2)).

5. Since May 28, 2013, the [plaintiff] has had the following severe impairment: ADHD (combined type) (20 CFR 416.924(c)).

6. Since May 28, 2013, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

7. Since May 28, 2013, the [plaintiff's] impairments have not functionally equaled the *Listings of Impairments* (20 CFR 416.994a(b)(2) and 419.926a and SSR 05-03p).

8. Since May 28, 2013, the [plaintiff] has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

9. The [plaintiff's] disability ended as of May 28, 2013, and the [plaintiff] has not become disabled again since that date (20 CFR 416.994a).

(Tr. 27-40).

In determining that Plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. Since May 28, 2013, [plaintiff] has had marked limitation in acquiring and using information. (Tr. 34-35).

2. Since May 28, 2013, [plaintiff] has had less than marked limitation in attending and completing tasks. (Tr. 35-36).

3. Since May 28, 2013, [plaintiff] has had less than marked limitation in interacting and relating to others. (Tr. 36-37).

4. Since May 28, 2013, [plaintiff] has had no limitation in moving about and manipulating objects as a result of her impairments. (Tr. 37-38).

5

5. Since May 28, 2013, [plaintiff] has had no limitation in the ability to care for herself as a result of her impairments. (Tr. 38-39).

6. Since May 28, 2013, [plaintiff] has had no limitation in health and physical well-being. (Tr. 39-40).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

6

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical and Educational Records

*Prior Agency Evaluation Establishing Disability*

In October 2010, state agency reviewing speech pathologist, Julie B. Jones, M.S., found that plaintiff had a less than marked limitation in the domain of acquiring and using information and an extreme limitation in the domain of interacting and relating with others. (Tr. 96-97). Ms. Jones relied on a consultative speech pathologist's finding that plaintiff's speech was intelligible 40% of the time to all listeners in all contexts and 60% of the time in known contexts. (Tr. 96). Because plaintiff had an extreme limitation in one functional domain, she was found to be disabled effective May 24, 2010. (Tr. 97-98).

*Dr. Roark*

After plaintiff was found to be disabled, she continued to treat with her family physician, Carol Roark, M.D. (*See* Tr. 375-422). At a physical in March 2011, when plaintiff was six years old and in the first grade, Dr. Roark noted that plaintiff "has no behavior problems to report." (Tr. 410). Plaintiff's physical examination was unremarkable. (Tr. 411-12). At an exam for ADHD in August 2011, Dr. Roark noted that plaintiff had received her ADHD medication from her counseling center for the last two years, an arrangement that began when plaintiff was in foster care. (Tr. 405). However, plaintiff's counseling center determined that she no longer needed counseling. Dr. Roark noted: "[Plaintiff] is only on 5 mg of Focalin XR. She eats and sleeps well and there is no concern about mood instability." (*Id.*). Dr. Roark reported a fully normal mental status examination and continued plaintiff's Focalin prescription. (Tr. 405-06).

In January 2012, plaintiff's mother reported to Dr. Roark that plaintiff was "doing fine" on medication, but she was unable to read and her school was avoiding the request that she be placed on an individualized education plan ("IEP"). (Tr. 400). Plaintiff's mother did not feel that plaintiff had behavioral problems at home. Dr. Roark found plaintiff was well-behaved and typed out a request for an IEP for plaintiff's mother to take to her school. Dr. Roark increased plaintiff's Focalin dosage to ten milligrams because plaintiff "has grown a lot." (*Id.*). Plaintiff's mental status examination was fully normal. (Tr. 400-01). In March 2012, Dr. Roark noted a problem with plaintiff's insurance authorizing her Focalin. (Tr. 397). Dr. Roark noted that plaintiff had no immediate issues at school even though she had been out of her medication for a few days. (*Id.*). At a physical in April 2012, plaintiff's mother reported that plaintiff had no behavior problems at school, had not received an IEP, and was being retained in the second grade. (Tr. 392). Plaintiff's examination was unremarkable and Dr. Roark switched plaintiff's ADHD medication to Concerta. (Tr. 392-95).

In September 2012, plaintiff's father reported that plaintiff remained in speech therapy and could not read. (Tr. 386). Plaintiff's father reported that plaintiff "does not focus a whole lot," but Dr. Roark was "uncertain how to interpret" this statement as plaintiff's father did not see plaintiff when the medication was in her system and did not give her the medication during the summer months. (*Id.*). Dr. Roark switched plaintiff back to Focalin, noting that it had been reauthorized by plaintiff's insurance company. (Tr. 386-87).

In December 2012, plaintiff's father reported that plaintiff was still struggling in school and had more trouble with reading than math. (Tr. 381). Plaintiff remained in speech therapy. (*Id.*). Plaintiff's parents did not give her ADHD medication on the weekend, and plaintiff's father was unable to tell Dr. Roark how the medicine affected her at school. (Tr. 382). In

January 2013, plaintiff's father reported that plaintiff would probably be advanced to the third grade but would continue to do second grade work. (Tr. 377). Dr. Roark continued plaintiff on Focalin and diagnosed a developmental reading disorder. (Tr. 378).

*Ms. Walsh*

In April 2013, speech pathologist Gail Walsh examined plaintiff for disability purposes. (Tr. 424-25). Ms. Walsh noted that plaintiff was pleasant but very quiet and "required prompts to attend as the evaluation continued." (Tr. 424). If Ms. Walsh spoke to plaintiff's father, plaintiff "began crawling under the table and climbing in her chair from the back." (*Id.*). Ms. Walsh reported that on the Goldman-Fristoe Test of Articulation-2, plaintiff produced zero errors at the word level but Ms. Walsh observed an occasional frontal lisp on the "s" sound and some weak "r" sounds. However, Ms. Walsh determined that plaintiff "is 100% intelligible for all listeners in all contexts." (*Id.*). Ms. Walsh also administered the Oral and Written Language Scales II, and plaintiff scored in the 61st percentile in listening comprehension, the 25th percentile in oral expression, and the 39th percentile in oral composite. (Tr. 425). Ms. Walsh noted that these scores were in the average range.

*Mr. Kroger*

In April 2013, certified psychologist Mark D. Kroger, M.S., examined plaintiff for disability purposes. (Tr. 426-32). He noted that he had reviewed plaintiff's August 2010 IQ scores, which showed a full scale IQ score of 70. (Tr. 426). Plaintiff's father reported that plaintiff interacts adequately with her parents, siblings, and teachers, and she has no difficulty making or keeping friends. (Tr. 427). Plaintiff's father indicated plaintiff was not prone to physical altercations or verbal arguments. Plaintiff's father described plaintiff's classroom behaviors "as being inattentive with ease of distraction," disturbing other children, and failing to

9

complete her work.  (*Id.*).  Plaintiff's father further described plaintiff "as a daydreamer who is slow-moving and slow-responding, and who has difficulties both in thinking of words to say as well as in following directions."  (*Id.*).

Mr. Kroger noted that plaintiff presented as a fairly groomed individual who was dressed in an age appropriate and casual manner.  (Tr. 428).  Her facial expressions were generally rather impassive and flat.  Her eye contact was variable, sometimes adequate, but at times avoidant with her head looking straight down.  She was "mildly fidgety" during the evaluation.  (*Id.*).  Plaintiff was passively cooperative and her style of responding and ability to follow instructions appeared to be good.  Her motivation and persistence appeared to be adequate.  Although she exhibited a slight articulation disorder, Mr. Kroger indicated that she was "fully understandable for the purposes of this evaluation."  (*Id.*).

Mr. Kroger administered the Wechsler Intelligence Scale for Children – Fourth Edition ("WISC-IV") on which plaintiff obtained a full scale IQ score of 102 (55th percentile), which fell in the average range of intellectual development.  Mr. Kroger opined that a 13-point discrepancy in plaintiff's scores on the verbal comprehension and perceptual reasoning scores on the WISC-IV "suggests the possible presence of a learning disability."  (*Id.*).  On the Wide Range Achievement Test-IV ("WRAT-4"), plaintiff scored in the 13th percentile in word reading (1.9 grade equivalent), the 8th percentile in spelling (1.5 grade equivalent), and the 81st percentile in math computation (4.3 grade equivalent).  (Tr. 429).  Mr. Kroger opined that plaintiff's score in math computation "suggests that [plaintiff] has average to high average cognitive capacities," and that her weaker performance in language arts functioning "again suggests the possible presence of a learning disability."  (*Id.*).

10

Mr. Kroger diagnosed plaintiff with ADHD and rule out learning disorder, not otherwise specified. (Tr. 430). Mr. Kroger opined that plaintiff's ability to engage in age-appropriate activities, socialize, and perform in social relationships appears to be fair to mildly impaired. (Tr. 431). He described plaintiff's ability to learn as variable, falling in the average or above range for math computation but below average with a possible learning disability in language arts. He opined that plaintiff's ability to attend and concentrate appears to be moderately impaired and her ability to communicate appears to be fair to mildly impaired. (*Id.*). He assessed plaintiff's prognosis as "fair, as long as she receives appropriate interventions to address her identified needs." (Tr. 432).

*Non-examining State Consultants*

In May 2013, psychologist Dan Vandivier, Ph.D., and speech pathologist Julie B. Jones, M.S., reviewed plaintiff's file under the functional domains for determining childhood disability. (Tr. 433-38). They found that plaintiff had no limitation in the domains of acquiring and using information and caring for oneself, and less than marked limitation in the domains of attending and completing tasks and interacting and relating with others. (Tr. 435-36). They offered no opinion concerning the domains of moving and manipulating objects and health and physical well-being. (Tr. 436). They concluded that medical improvement had been established and gave great weight to the opinions of the consultative examiners. (Tr. 438). On reconsideration in July 2013, psychologist Ed Ross, Ph.D., reached the same conclusions. (Tr. 439-44).

*Teacher Questionnaire*

In May 2014, Cami Young, plaintiff's teacher, and Nancy Price, the director of special education at plaintiff's school, completed a questionnaire for disability purposes. (Tr. 300-07). At the time they completed this questionnaire, plaintiff was in the third grade and was not

11

receiving special education services. (Tr. 300). Plaintiff's mid-second grade reading level was below average, her third grade math level was average, and her second grade written language level was below average. (*Id.*). They opined: "When [plaintiff] focuses, she can perform at grade level in math. However, mom took her off the medication this year." (*Id.*). In the domain of acquiring and using information, they indicated that plaintiff has a "serious problem" reading and comprehending written material and an "obvious problem" expressing ideas in written form. (Tr. 301). Further, plaintiff has "no problem" comprehending oral instructions and understanding and participating in class discussions, and a "slight problem" in the following tasks: (1) understanding vocabulary; (2) providing organized oral explanations and adequate descriptions; (3) learning new material; (4) recalling and applying previously learned material; and (5) applying problem-solving skills in class discussions. (*Id.*). They opined that plaintiff "has the ability to communicate and participate in class discussions, but will usually just sit until called upon, or become distracted." (*Id.*).

In the domain of attending and completing tasks, Ms. Young and Ms. Price indicated that plaintiff has a serious problem in the following tasks: (1) focusing long enough to finish an assigned activity; (2) refocusing to task when necessary; (3) completing class/homework assignments; and (4) working at a reasonable pace or finishing on time. (Tr. 303). Further, plaintiff has an obvious problem in the following tasks: (1) carrying out multi-step instructions; (2) organizing her own things or school materials; and (3) completing work accurately without careless mistakes. They opined that plaintiff "is often distracted to finish work at a normal pace. Removed from medication this school year by mother. Mother reports she cries but she denies crying over homework." (*Id.*).

12

In the domain of interacting and relating with others, they opined that plaintiff has an obvious problem making and keeping friends and a slight problem in the following tasks: (1) playing cooperatively; (2) seeking attention appropriately; and (3) expressing anger appropriately. (Tr. 302). They indicated that it had not been necessary to implement behavior modification strategies. They opined that plaintiff has "peer problems when mom shaves her head to the scalp. She is embarrassed about not having hair. As her hair grows, she becomes more interactive with peer[s]." (*Id.*). As to plaintiff's speech, they opined that they could understand almost all of plaintiff's speech without requiring her to repeat or rephrase her speech. (Tr. 305).

Ms. Young and Ms. Price indicated that plaintiff has no problems in the domain of moving about and manipulating objects. (*Id.*). In the domain of caring for herself, they indicated that plaintiff has a serious problem taking care of personal hygiene and an obvious problem in the following tasks: (1) handling frustration appropriately; (2) responding appropriately to changes in her own mood (e.g. calming self); and (3) knowing when to ask for help. (Tr. 304). They opined that "personal hygiene is not a priority in home." (*Id.*). Finally, plaintiff's teachers opined that plaintiff performed better in school when she was medicated, but her mother had discontinued her medication. (Tr. 307).

**E. Specific Error**

On appeal, plaintiff argues the ALJ erred in finding that she was no longer disabled. (*See* Doc. 11 at 1-2). Specifically, plaintiff contends that she continues to receive medication and counseling, struggles in school, does not get along with other children, has a bad temper, has a learning disorder, and does not cope well with change or conflict. (*Id.* at 1). Further, plaintiff asserts that she does not act her age, has difficulty with reading and spelling, has been in and out

13

of psychiatric hospitals, has to be told when to bathe and change clothes, and has behavioral problems in school. (*Id.* at 2).

The ALJ found that medical improvement had occurred as of May 28, 2013 because plaintiff's language and speech delays "had dramatically improved to permit her release from speech therapy and placement within the regular educational curriculum without the need for special accommodations." (Tr. 28). The ALJ also noted Ms. Walsh's consultative examination as evidence of medical improvement because at the April 2013 examination, plaintiff's listening comprehension and oral expression skills were "average" and she was 100% intelligible for all listeners in all contexts. (*Id.*).

The ALJ determined that plaintiff's impairments did not meet or medically equal any listed impairment, including listings 112.11 (ADHD) and 112.08 (personality disorders). (Tr. 29). As to listing 112.11, the ALJ concluded that plaintiff's ADHD did not manifest at "marked" levels of inattention, impulsiveness, and hyperactivity, particularly when plaintiff was properly medicated. The ALJ further noted that plaintiff did not require a specialized behavioral plan at school and Mr. Kroger found her ADHD to rise to only moderate levels. As to listing 112.08, the ALJ found that plaintiff no longer experienced mood disturbances, no longer manifested aggressive behaviors, and had no more than "slight" difficulty in her abilities to play cooperatively, seek attention appropriately, and express her anger properly. (*Id.*).

The ALJ also found that plaintiff's impairments did not functionally equal the listings after considering the six functional domains. (Tr. 30-40). The ALJ determined that since May 28, 2013, plaintiff has had a marked limitation in the domain of acquiring and using information based on Mr. Kroger's opinion that wide discrepancies in her standardized tests are suggestive of a learning disorder and her teachers' opinion that she continues to have a serious problem with

14

reading and an obvious problem with expressing ideas in written form. (Tr. 35). The ALJ noted that plaintiff's reading and written language skills are below average and her learning difficulties persist even though she repeated the second grade. The ALJ concluded that plaintiff's learning difficulties "are compounded significantly by her presently untreated ADHD." (*Id.*).

In the domain of attending and completing tasks, the ALJ determined that since May 28, 2013, plaintiff's limitations have been less than marked. (Tr. 36). While recognizing that plaintiff's teachers found a number of "obvious" and "serious" limitations in tasks related to attention and task completion, the ALJ noted that Mr. Kroger concluded that plaintiff's ADHD persists at only a moderate level. The ALJ also noted that educational and treatment records demonstrate that plaintiff's ADHD symptoms significantly improve when she is properly medicated. Further, the ALJ found that even though plaintiff's ADHD symptoms worsened after her mother discontinued her medication, plaintiff "remains in the regular academic curriculum and does not require special education support or accommodations for her attention-based difficulties." (*Id.*).

In the domain of interacting and relating with others, the ALJ determined that since May 28, 2013, plaintiff's limitations have been less than marked. (Tr. 37). The ALJ noted that Ms. Walsh had found "dramatic improvements in [plaintiff's] basic speech and language skills" and that plaintiff had been released from specialized therapy services. (*Id.*). The ALJ also noted that the teacher questionnaire and Mr. Kroger's evaluation revealed only "slight" articulation errors. The ALJ also relied on Mr. Kroger's evaluation in finding that plaintiff "now gets along well with her parents, siblings, peers, and teacher, and experiences no troubles in making or keeping friends." (*Id.*). Nevertheless, because plaintiffs' teachers continued to report "obvious" problems in making and keeping friends and Mr. Kroger found "mild to moderate" conduct

15

problems, the ALJ found that plaintiff "continues to experience less than marked impairment in this functional domain." (*Id.*).

Finally, the ALJ found no limitations in the domains of moving about and manipulating objects, caring for self, and health and physical well-being. (Tr. 37-39). As to caring for self, the ALJ found that despite personal hygiene problems identified in the teacher questionnaire, "the available evidence reflects her clinically adequate levels of grooming." (Tr. 39). Further, the ALJ concluded that plaintiff "alleges no specific impairment in this domain, nor does the available evidence support any finding of limitations in this area." (*Id.*).

Substantial evidence supports the ALJ's determination that plaintiff is no longer disabled. First, the ALJ properly determined that plaintiff has experienced medical improvement in her condition. *See* 20 C.F.R. § 416.944a(a)(1). Specifically, substantial evidence supports the ALJ's finding that plaintiff's language and speech delays "had dramatically improved." (Tr. 28). Plaintiff's initial award of benefits was based on the finding that plaintiff had an extreme limitation in her ability to interact and relate with others because her speech was intelligible only 40% of the time to all listeners in all contexts and 60% of the time in known contexts. (Tr. 96-97). When Ms. Walsh examined plaintiff in April 2013, she reported that plaintiff produced zero errors at the word level during articulation testing, but had an occasional frontal lisp on the "s" sound and some weak "r" sounds. (Tr. 424). However, Ms. Walsh determined that plaintiff "is 100% intelligible for all listeners in all contexts." (*Id.*). Further, Mr. Kroger opined that plaintiff has only a "slight" articulation disorder and her teachers indicated that they could understand almost all of plaintiff's speech without requiring her to repeat or rephrase her speech. (Tr. 305, 428). Thus, substantial evidence supports the ALJ's determination that plaintiff has experienced medical improvement in her condition.

16

Substantial evidence also supports the ALJ's determination that plaintiff's impairments no longer meet or medically or functionally equal a listing. *See* 20 C.F.R. § 416.944a(a)(1). Plaintiff's arguments concerning her alleged current condition relate to the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self. (*See* Doc. 11 at 1-2). The Court will consider each domain in turn.

*Acquiring and Using Information*

First, substantial evidence supports the ALJ's determination that plaintiff has a marked limitation in acquiring and using information. This domain involves how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community. *See* 20 C.F.R. § 416.926a(g) and SSR 09-3p. School-age children like plaintiff "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). They "will need to use these skills in academic situations to demonstrate what [they] have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." *Id.* Examples of limitations in this domain include: (1) not demonstrating understanding of words about space, size, or time; e.g., in/under, big/little, morning/night; (2) being unable to rhyme words or the sounds in words; (3) having difficulty recalling important things learned in school the day before; (4) having difficulty solving mathematics questions or computing arithmetic answers; (5) talking only in short, simple sentences and having difficulty explaining concepts; (6) not reading, writing, or doing arithmetic at appropriate grade level; and (7) having difficulty understanding instructions. 20 C.F.R. § 416.926a(g)(3) and SSR 09-3p.

17

Mr. Kroger administered the WRAT-4 intelligence test when plaintiff was repeating the second grade. (Tr. 427, 429). Plaintiff scored in the 13th percentile in word reading (1.9 grade equivalent), the 8th percentile in spelling (1.5 grade equivalent), and the 81st percentile in math computation (4.3 grade equivalent). (Tr. 429). Mr. Kroger opined that plaintiff's weaker performance in language arts functioning suggested "the possible presence of a learning disability." (*Id.*). When plaintiff was in the third grade, her teachers indicated that her mid-second grade reading level and second grade writing level were below average, but her third grade math level was average. (Tr. 300). They indicated that plaintiff has a "serious problem" reading and comprehending written material and an "obvious problem" expressing ideas in written form. (Tr. 301). Plaintiff's teachers also opined that her ability to learn worsened after her mother discontinued her ADHD medication. (Tr. 307).

Based on this record, substantial evidence supports the ALJ's determination that plaintiff has a marked limitation in her ability to acquire and use information. Plaintiff's documented difficulties with reading and writing are consistent with a marked limitation in this domain. *See* 20 C.F.R. § 416a(g)(2)(iv) and (g)(3); SSR 09-3p. While this evidence of plaintiff's reading and writing problems is consistent with finding a marked limitation, other evidence shows plaintiff's limitations in this domain did not rise to an extreme level. For example, as the ALJ noted, once plaintiff experienced improvement in her language and speech delays, she no longer received special education services and was not placed on an IEP. (*See* Tr. 31, 300, 392, 400, 424). Further, plaintiff's intelligence tests show she is of average intelligence and she is capable of performing at or above grade level in math computation when properly medicated. (*See* Tr. 300, 428-29). Accordingly, substantial evidence supports the ALJ's assessment of plaintiff's limitations in this domain.

18

*Attending and Completing Tasks*

Second, substantial evidence supports the ALJ's determination that plaintiff has a less than marked limitation in attending and completing tasks. This domain involves how well a child is able to focus and maintain attention and how well she begins, carries through, and finishes her activities, including the pace at which she performs activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h). School-age children like plaintiff should be able to focus their attention "in order to follow directions, remember and organize [their] school materials, and complete classroom and homework assignments." 20 C.F.R. § 416.926a(h)(2)(iv). Further, they should be able to concentrate on details, not make careless mistakes, change their activities or routines without distracting others, stay on task and in place when appropriate, sustain their attention well enough to participate in group activities, read by themselves, complete family chores, and complete a transition task without extra reminders and accommodation. *Id.* Examples of limitations in this domain include: (1) being easily startled or distracted; (2) being slow to focus on or fail to complete activities of interest; (3) repeatedly becoming sidetracked from activities or frequently interrupting others; (4) being easily frustrated and giving up on tasks; and (5) requiring extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

Mr. Kroger noted that while plaintiff was "mildly fidgety" during the consultative examination, her ability to follow instructions appeared to be good and her motivation and persistence appeared to be adequate. (Tr. 428). He opined that plaintiff's ability to attend and concentrate appears to be only moderately impaired. (Tr. 431). Dr. Roark noted that in January 2012, plaintiff's mother reported that plaintiff was "doing fine" on medication and did not have behavioral problems at home. (Tr. 400). While plaintiff's father reported in September 2012

19

that plaintiff "does not focus a whole lot," Dr. Roark was "uncertain how to interpret" this statement as plaintiff's father did not see plaintiff when the ADHD medication was in her system and did not give her the medication during the summer months. (Tr. 386). Plaintiff's teachers indicated that plaintiff had serious and obvious problems in a majority of the activities related to the domain of attending and completing tasks. (Tr. 303). However, they indicated that plaintiff's mother had discontinued plaintiff's ADHD medication before they completed their evaluation and they opined that plaintiff performed better in school when she was medicated. (Tr. 303, 307).

Based on this record, substantial evidence supports the ALJ's determination that plaintiff has a less than marked limitation in this domain. Specifically, Mr. Kroger's opinion and plaintiff's mother's report that plaintiff was "doing fine" on medication support the ALJ's determination that plaintiff's limitations in this domain are less than marked. While the teacher questionnaire completed when plaintiff was not taking medication could support greater limitations, the ALJ properly noted that plaintiff's ADHD symptoms significantly improve when she is properly medicated. (Tr. 36). *See Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 464 (6th Cir. 2014) (fact that ADHD medication made plaintiff's symptoms more manageable supported ALJ's finding of less than marked limitation in attending and completing tasks); *Parachini v. Comm'r of Soc. Sec.*, No. 1:11-cv-1670, 2012 WL 1643560, at *12 (N.D. Ohio May 10, 2012) ("Substantial evidence [about plaintiff's behavior when taking ADHD medication] definitely supports the notion that [plaintiff's] prescribed medications control his symptoms and reduce the severity of any limitation in the domain of attending and completing tasks he may otherwise have to less than marked."). Accordingly, substantial evidence supports the ALJ's assessment of plaintiff's limitations in this domain.

20

*Interacting and Relating with Others*

Third, substantial evidence supports the ALJ's determination that plaintiff has a less than marked limitation in interacting and relating with others. This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). School-age children like plaintiff should be developing more lasting friendships with children who are of the same age. 20 C.F.R. § 416.926a(i)(2)(iv). Further, they should begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and tolerate differences, and be able to talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand. *Id.* Examples of limitations in this domain include: (1) not reaching out to be picked up and held by a caregiver; (2) having no close friends, or only friends who are older or younger than the child; (3) avoiding or withdrawing from people the child knows; (4) being overly anxious or fearful of meeting new people or trying new experiences; (5) having difficulty playing games or sports with rules; (6) having difficulty communicating with others; e.g., in using verbal and nonverbal skills, carrying on a conversation, or in asking others for assistance; and (7) having difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

Ms. Walsh noted that while plaintiff exhibited an occasional frontal lisp on the "s" sound and some weak "r" sounds, she was "100% intelligible for all listeners in all contexts." (Tr. 424). Plaintiff's father reported to Mr. Kroger that plaintiff interacts adequately with her parents, siblings, and teacher, and she has no difficulty making or keeping friends. (Tr. 427). Plaintiff's father also indicated that plaintiff was not prone to physical altercations or verbal arguments.

21

(*Id.*). Mr. Kroger noted that during his examination of plaintiff, she was passively cooperative and her style of responding appeared to be good. (Tr. 428). While plaintiff exhibited a slight articulation disorder, Mr. Kroger indicated that she was "fully understandable." (*Id.*). Mr. Kroger opined that plaintiff's ability to engage in age-appropriate activities, socialize, and perform in social relationships appears to be fair to mildly impaired. (Tr. 431). Plaintiff's teachers opined that plaintiff has an obvious problem making and keeping friends, but they believed that plaintiff's problem was related to embarrassment when her mother "shaves her head to the scalp" because "[a]s her hair grows, she becomes more interactive with peer[s]." (Tr. 302). As to plaintiff's speech, her teachers indicated that they could understand almost all of plaintiff's speech without requiring her to repeat or rephrase her speech. (Tr. 305).

Based on this record, substantial evidence supports the ALJ's determination that plaintiff has a less than marked limitation in this domain. Specifically, the record contains substantial evidence that plaintiff's speech is intelligible to all listeners, that she interacts adequately with others, and that she is able to make and keep friends. Accordingly, substantial evidence supports the ALJ's assessment of plaintiff's limitations in this domain.

*Caring for Self*

Finally, substantial evidence supports the ALJ's determination that plaintiff has no limitation in caring for herself. This domain considers how well a child maintains a healthy emotional and physical state, gets physical and emotional wants and needs met in appropriate ways, copes with stress and change, and takes care of health, possessions, and living area. 20 C.F.R. § 416.926a(k). School-age children like plaintiff should be independent in most day-to-day activities such as dressing and bathing, but may still need to be reminded to do these routinely. 20 C.F.R. § 416.926a(k)(2)(iv). Further, they should begin to recognize areas of

22

competence and difficulty, be able to identify circumstances when they feel good and bad about themselves, begin to develop understanding of what is right and wrong and what is acceptable and unacceptable behavior, begin to demonstrate consistent control over their own behavior, be able to avoid unsafe behaviors, and begin to imitate more of the behavior of adults they know. *Id.* Examples of limitations in this domain include: (1) continuing to place non-nutritive or inedible objects in the child's mouth; (2) using self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food); (3) having restrictive or stereotyped mannerisms (e.g., body rocking, headbanging); (4) not dressing or bathing appropriately because of an impairment affecting this domain; (5) engaging in self-injurious behavior or ignoring safety rules; (6) not spontaneously pursuing enjoyable activities or interests; and (7) having disturbance in eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3).

Plaintiff's teachers indicated that plaintiff has a serious problem taking care of personal hygiene and an obvious problem in the following tasks: (1) handling frustration appropriately; (2) responding appropriately to changes in her own mood; and (3) knowing when to ask for help. (Tr. 304). For the other six tasks related to this domain, they indicated that plaintiff has no problem or only a slight problem. They opined that "personal hygiene is not a priority in home." (*Id.*). In contrast, Dr. Roark repeatedly noted that plaintiff's appearance on examination was "neat and casual" or "well-groomed." (Tr. 377, 397, 400, 404-05). Further, Mr. Kroger noted that plaintiff presented as a fairly groomed individual who was dressed in an age appropriate and casual manner. (Tr. 428). Plaintiff's father reported to Mr. Kroger that plaintiff rides her bike and watches television after school. (Tr. 427). Plaintiff's father also reported to Mr. Kroger that while plaintiff has a chore of cleaning her room, she completes that chore halfway or not at all. (*Id.*). At the hearing before the ALJ, plaintiff's father testified that plaintiff enjoyed building

23

clubhouses in her room, playing with the dog, watching television, and playing outside. (Tr. 68-69). Plaintiff's father also testified that plaintiff is able to brush her own teeth, bathe, and dress, but her parents have to pick out her clothes. (Tr. 75).

Based on this record, substantial evidence supports the ALJ's determination that plaintiff has no limitation in this domain. Specifically, while the teacher questionnaire could support some degree of limitation in this domain, the record contains other substantial evidence that plaintiff is groomed appropriately, is able to dress and bathe herself, and pursues enjoyable activities. *See* 20 C.F.R. § 416.926a(k)(3). Accordingly, substantial evidence supports the ALJ's assessment of this domain. Thus, based on the foregoing, substantial evidence supports the ALJ's determination that plaintiff's impairment does not functionally equal an impairment in the listings because she does not have marked limitations in two domains of functioning nor an extreme limitation in one domain. *See* 20 C.F.R. § 416.926a(d).

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED**.


Date:  12/5/16

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LASHEENA COOPER,                                      Case No. 1:16-cv-240
on behalf of L.C.,                                    Beckwith, J.
      Plaintiff,                                  Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

      Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).